**WO** SVK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ricardo Herrera, ) | No. CV 07-0566-PHX-GMS (DKD) |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Phoenix Police Chief, et al., ) | |
| Defendants. ) | |

Plaintiff Ricardo Herrera, who is currently confined in the Arizona State Prison Complex in Tucson, filed this *pro se* civil rights action against the Phoenix Police Chief and several officers of the Phoenix Police Department. (Doc. #1.) The Court ordered Officers Dorman, Cutchall, and Reiff to answer Counts I, II, and III, in which Plaintiff alleged that Defendants used excessive force during Defendants' apprehension of Plaintiff and then refused to get him medical attention for his injuries. The Court dismissed the remaining counts and Defendants. (Doc. #3.) Defendants now move for summary judgment.[1] (Doc. #45.) The motion is ready for ruling. (Doc. ##50, 54.)

The Court will grant the motion in part and deny it in part.

///

///

---

[1] The Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), advising Plaintiff of his responsibility to respond. (Doc. #47.)

**I.     Background**

This case arises out of Plaintiff's apprehension on September 15, 2005, at approximately 1:00 am as a suspect in a home-invasion robbery. Plaintiff alleged that his Fourth Amendment rights were violated because Dorman used excessive force during the arrest and that Cutchall and Reiff failed to take any action to stop Dorman. (Doc. #1.) He further alleged that Dorman denied him medical treatment by refusing to take him to the hospital and by using threats and intimidation to prevent him from leaving to receive treatment. Although Plaintiff was not arrested that night, he was later arrested and charged in connection with the robbery and found guilty.

Defendants move for summary judgment on the grounds that (1) Plaintiff cannot prove that Cutchall or Reiff participated in any force used by Dorman; (2) Dorman's conduct was reasonable and, therefore, did not violate the Fourth Amendment; and (3) Dorman is entitled to qualified immunity.

**II.    Legal Standards**

  **A.    Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

1  for the non-moving party.  Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d
2  1216, 1221 (9th Cir. 1995).  Rule 56(e) compels the non-moving party to "set out specific
3  facts showing a genuine issue for trial" and not to "rely merely on allegations or denials
4  in its own pleading."  Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith
5  Radio Corp., 475 U.S. 574, 586-87 (1986).  The opposing party need not establish a
6  material issue of fact conclusively in its favor; it is sufficient that "the claimed factual
7  dispute be shown to require a jury or judge to resolve the parties' differing versions of the
8  truth at trial."  First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89
9  (1968).  However, Rule 56(c) mandates the entry of summary judgment against a party
10 who, after adequate time for discovery, fails to make a showing sufficient to establish the
11 existence of an element essential to that party's case and on which the party will bear the
12 burden of proof at trial.  Celotex, 477 U.S. at 322-23.

13        When considering a summary judgment motion, the court examines the pleadings,
14 depositions, answers to interrogatories, and admissions on file, together with the
15 affidavits, if any.  Fed. R. Civ. P. 56(c).  At summary judgment, the judge's function is
16 not to weigh the evidence and determine the truth but to determine whether there is a
17 genuine issue for trial.  Anderson, 477 U.S. at 249.  The evidence of the non-movant is
18 "to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.
19 But, if the evidence of the non-moving party is merely colorable or is not significantly
20 probative, summary judgment may be granted.  Id. at 249-50.

21        **B.  Excessive Force**
22       "'[A]ll claims that law enforcement officers have used excessive force . . . in the
23 course of an arrest . . . should be analyzed under the Fourth Amendment 'reasonableness'
24 standard.'"  Forrester v. City of San Diego, 25 F.3d 804, 806 (9th Cir. 1994) (quoting
25 Graham v. Connor, 490 U.S. 386, 395 (1989).  The Supreme Court has stated:
26            The reasonableness of a particular use of force must be judged
             from the perspective of a reasonable officer on the scene,
27           rather than with 20/20 vision of hindsight.
             . . .
28

> The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

Id. at 396-97 (citations omitted).  In determining whether an officer acted objectively reasonably under the Fourth Amendment, the Court considers the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.  The court must balance the nature and the quality of the intrusion on the individual's Fourth Amendment interests against the Government interests at stake.  Id. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8 (1985)). Whether the amount of force used was reasonable is usually a question of fact for the jury.  Barlow v. Ground, 943 F.2d 1132, 1135 (9th 1991).  Summary judgment should be granted sparingly.  Bell v. City of Seattle, 395 F. Supp.2d 992, 998 (W.D. Wash. 2005).

**C.     Qualified Immunity**

A defendant in a § 1983 action is entitled to qualified immunity from damages for civil liability if his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In Saucier v. Katz, 533 U.S. 194, 201 (2001), the Supreme Court mandated a two-step sequence for resolving a qualified immunity claim: the "constitutional inquiry" and the "qualified immunity inquiry."  The "constitutional inquiry" asks whether, when taken in the light most favorable to the non-moving party, the facts alleged show that the official's conduct violated a constitutional right.  Id.  If so, a court would turn to the "qualified immunity inquiry" and ask if the right was clearly established at the relevant time.  Id. at 201-02.  This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201.

In Pearson v. Callahan, — S.Ct.—, 2009 WL 128768, *9 (Jan. 21, 2009), the Supreme Court held that the Saucier procedure is not an inflexible requirement; judges "should be permitted to exercise their sound discretion in deciding which of the two

- 4 -

1 prongs of the qualified immunity analysis should be addressed first in light of the
2 circumstances in the particular case at hand."

3     A right is clearly established if its contours are "sufficiently clear that a reasonable
4 official would understand that what he is doing violates that right." Kennedy v. City of
5 Ridgefield, 439 F.3d 1055, 1065 (9th Cir. 2006) (quoting Hope v. Pelzer, 536 U.S. 730,
6 739 (2002)). It is not necessary that there be a prior case with the identical facts showing
7 that a right is clearly established; it is enough that there is preexisting law that provides a
8 defendant "fair warning" that his conduct was unlawful. Kennedy, 439 F.3d at 1065.

9 **III.     Motion for Summary Judgment**

10     **A.     Parties' Contentions**

11     Defendants submit their Statement of Facts (Doc. #46 (DSOF)); the affidavits of
12 Officers Dorman and Cutchall, (id., Ex. 1, Dorman Aff.; Ex. 2 Cutchall Aff.); excerpts
13 from Plaintiff's deposition (id., Ex. 3, Pl.'s Dep. (May 28, 2008)); and Plaintiff's plea to
14 four counts in connection with the home invasion robbery (id., Ex. 4.).

15     On September 15, 2005, at approximately 1:00 a.m., Dorman received a radio dispatch
16 regarding a home-invasion robbery that was in progress and involved firearms. (DSOF ¶ 1.)
17 At the time he received the call, Dorman was about a minute from the location; he was the
18 first Phoenix police officer to respond to the scene. (Id. ¶ 2; Dorman Aff. ¶ 5.)

19     Given his proximity to the crime in progress, Dorman knew that it was likely that he
20 would encounter armed suspects as he approached the location. (DSOF ¶ 3; Dorman Aff. ¶¶
21 4-5.) To facilitate the element of surprise, Dorman turned off his headlights and interior
22 lights and drove toward the residence where the home invasion was reportedly underway,
23 approaching the residence slowly so that he could see any unusual movements on the
24 perimeter of the street. (DSOF ¶ 4; Dorman Aff. ¶ 6.) As he neared the home, Dorman saw
25 a male adult, later identified as Plaintiff, walking across the street away from the residence
26 where the incident had reportedly occurred. (DSOF ¶ 5.) Dorman could not determine the
27 person's ethnicity. (Dorman Aff. ¶ 8.)

28

- 5 -

1    Dorman slowed his vehicle; Plaintiff crouched down in the street, looked at Dorman,
2    and suddenly changed directions by walking north across the street toward a black
3    automobile. (DSOF ¶ 6; Dorman Aff. ¶ 10.) Given the time of day, Plaintiff's nearness to
4    the victim's house, and his erratic behavior of quickly changing directions, Dorman believed
5    that Plaintiff was involved in the home invasion. (DSOF ¶ 7.)

6    Accordingly, Dorman immediately stopped his vehicle, jumped out, drew his service
7    weapon and ordered Plaintiff to stop. (DSOF ¶ 8; Dorman Aff. ¶ 11.) Plaintiff disobeyed
8    the command and immediately started running across the street and into El Prado Park.
9    (DSOF ¶ 9; Dorman Aff. ¶ 12.) Dorman holstered his weapon, informed radio dispatch that
10   he was in a foot pursuit, and chased Plaintiff into the park. (DSOF ¶ 10; Dorman Aff. ¶ 13.)

11   At about this time, Cutchall approached in a marked police car and pulled in behind
12   Dorman's vehicle. Seeing Dorman run into the park after Plaintiff, Cutchall drove his
13   vehicle into the park in pursuit. (DSOF ¶ 11; Dorman Aff. ¶ 14.) Cutchall drove over a
14   water retention area toward Plaintiff, eventually cutting Plaintiff off. (DSOF ¶ 12.)

15   When Plaintiff realized that he was not going to be able to outrun the police vehicle,
16   he stopped. (DSOF ¶13.) At that point, Cutchall ordered Plaintiff to put his hands on his
17   head and get down on his knees, but Plaintiff refused to comply with this order. (DSOF ¶
18   14; Cutchall Aff. ¶¶ 10-11.) Not knowing if Plaintiff was armed or would try to run again,
19   Dorman then came up from behind Plaintiff and pushed him to the ground. (Dorman Aff.
20   ¶ 16.) To control Plaintiff and facilitate cuffing him, Dorman put his knee into Plaintiff's
21   back and to the back of Plaintiff's head. (DSOF ¶15; Dorman Aff. ¶ 16.) Then Dorman
22   placed Plaintiff in handcuffs and searched him for weapons. (DSOF ¶ 16; Dorman Aff. ¶
23   17.) Cutchall did not physically touch Plaintiff during the initial detention and search for
24   weapons. (DSOF ¶ 17; Cutchall Aff. ¶ 21.) Reiff was not even present during the detention
25   or search of Plaintiff. (DSOF ¶ 18; Cutchall Aff. ¶ 20.)

26   After cuffing Plaintiff and searching him for weapons, Dorman placed Plaintiff into
27   the back of Cutchall's patrol vehicle. Cutchall then drove Plaintiff to the victims' house to
28   give the victims of the home invasion robbery an opportunity to identify Plaintiff as a

- 6 -

1  potential suspect. (DSOF ¶ 19.) The victims of the home invasion robbery were unable to
2  do so. (DSOF ¶ 20.) Plaintiff was released and, at his request, driven to his mother's house.
3  (DSOF ¶ 21.) Plaintiff had no visible injuries, he was not bleeding, he made no requests for
4  medical attention, he was able to walk, and he never made a citizens complaint against
5  Dorman in connection with his arrest. (DSOF ¶ 22; Dorman Aff ¶¶ 21-22; Cutchall Aff.
6  ¶¶15-16.)

   Plaintiff was later arrested and charged, in connection with the home-invasion
   robbery. (DSOF ¶ 23.) On June 24, 2008, he was found guilty of Conspiracy to Commit
   Burglary in the First Degree, Armed Robbery, Burglary in the First Degree, and Aggravated
   Assault. (DSOF ¶ 24.)

   Defendants argue that Plaintiff cannot show that Cutchall or Reiff participated in the
   force that Dorman used to subdue Plaintiff. Plaintiff stated in his deposition that Cutchall
   was "guilty by association" and did not participate in Dorman's use of force. In addition,
   Plaintiff cannot verify if Reiff was present. (Doc. #45 at 7.) Dorman argues that he had cause
   to believe that Plaintiff was involved in a home-invasion robbery and he used only the force
   necessary and reasonable to get control over Plaintiff who was fleeing the scene of a home
   invasion robbery involving firearms. He asserts that considering the Graham factors, 490
   U.S. at 396, and the need to make split second judgments, the force used was reasonable.
   (Doc. #45 at 9-11.) Dorman argues that because of the nature of the crime, when he reported
   to the scene there was a high probability that the suspect would be armed and dangerous.
   Plaintiff posed a threat of safety to the officers, which was increased by Plaintiff's
   unwillingness to obey the command to stop and get on the ground. In addition, Plaintiff was
   resisting and evading arrest. Dorman contends that he was justified in taking Plaintiff to the
   ground and restraining him till he was cuffed and searched for weapons.

   Finally, Dorman argues that because there was no clearly established right to put him
   on notice that using force to seize a fleeing suspect was unconstitutional, he is entitled to
   qualified immunity.

### 2. **Plaintiff's Contentions**

In support of his opposition, Plaintiff submits his Statement of Facts (Doc. #51, (PSOF)); excerpts from his deposition (id., Ex. 1, Pl. Dep. (May 28, 2008)); Plaintiff's unsworn statement (id., Ex. 2); Phoenix Police Department Report (id., Ex. 3); authentication of records and recordings and incident details (id. Ex. 4); Interview with Cutchall for State v. Herrera (id., Ex. 5, Cutchall Interview (April 10, 2008)); Interview with Dorman for State v. Herrera (id., Ex. 6, Dorman Interview (April 10, 2008)); what appear to be excerpts from trial (id., Ex. 7); and a Phoenix Police Department Report (id., Ex. 8).

Plaintiff asserts that at the time of the incident, he was walking to his mother's house. (PSOF ¶ 1.) The officers received a radio call regarding three black males, high school students, with hand guns and on foot. (Id. ¶ 2.) Plaintiff crossed the street and saw vehicles with no lights coming down the street, and he feared for his safety. (Id. ¶¶ 3-4.) The vehicles slammed on the breaks, and Plaintiff saw only a light when he turned around and someone yelled "hey." (Id. ¶ 5.) He was afraid and ran across the street into the park. (Id. ¶ 6.) Plaintiff asserts that Dorman knew "he was going to contact a [H]ispanic male." (Id. ¶ 7.) Plaintiff heard sirens as he ran, so he stopped because he realized it was the police. (Id. ¶ 8.) Cutchall told Plaintiff not to move and to put his hands in the air, which Plaintiff did. (Id. ¶ 9.) Dorman then kicked Plaintiff in the back, and Plaintiff hit the ground and blacked out for an undetermined period. (Id. ¶¶ 10-11.)

Plaintiff regained consciousness and was in handcuffs when Dorman began beating him by stomping his foot into Plaintiff's face and forcing his head onto the ground. Dorman stomped on Plaintiff's head and back and Plaintiff screamed for help. (Id. ¶ 12.) Cutchall and Reiff watched without intervening. (Id.) Plaintiff alleges he was dragged to the police car and leaned over the hood while Dorman patted him down; when Plaintiff asked what was going on, Dorman hit him on the right side under his ribs. (Id. ¶ 13.) Dorman kicked Plaintiff into the back of the patrol car and because there was no cushion to break the fall, Plaintiff came down on a hard surface. (Id. ¶¶ 14-15.) Plaintiff asked for medical treatment but was told to shut up. (Id. ¶ 15.)

1    The officers took Plaintiff for identification by the victims, but the victims said that
2    Plaintiff did not rob them and that it was black men. (Id. ¶¶ 17-18.)  The victim asked if
3    Plaintiff was hurt, and Plaintiff said the police beat him. (Id. ¶ 19.)   The Sergeant told the
4    officers to take Plaintiff home; Plaintiff again asked for medical treatment, and Dorman
5    refused. (Id. ¶¶ 20-21.)  Plaintiff threatened to get a lawyer, and the officers told him not to
6    leave the house. (Id. ¶ 23.)

7    Plaintiff argues that Dorman knew that Plaintiff did not fit the description of the
8    perpetrators, that he was unarmed and complied with Cutchall's commands, and that Plaintiff
9    was beaten while in handcuffs and cooperative. (Doc. #51 at 2.)  He argues that the severity
10   of the crime weighs in his favor because he did not fit the description of the perpetrators, that,
11   likewise, he posed no threat because he did not fit the description, and that he was not
12   resisting arrest. (Id. at 9.)  He asserts that the beating caused a serious injury to his right eye
13   and vision problems and that he is in the "early stages of schizophrenia," which is caused by
14   head injury. (Id.)  He contends that Dorman is not entitled to qualified immunity.  Plaintiff
15   argues that Reiff was with Cutchall on the night in question and that Cutchall has given
16   inconsistent statements regarding this matter. (Id. at 6.)

### 3. Defendants' Reply

18   In their reply, Defendants argue that Plaintiff has provided no sworn testimony or
19   admissible evidence to establish that Reiff was present during his detention by Dorman.
20   (Doc. #54 at 3-4.)  They assert that Plaintiff offers only a police report that contains Reiff's
21   name and badge number, which is inadmissible hearsay.  In addition, Cutchall attests that
22   Reiff was not present during Plaintiff's detention. (Id., see DSOF ¶18, Cutchall Aff. ¶ 20).
23   During his deposition, Plaintiff testified that he was not sure if Reiff was present and that he
24   was only speculating that Reiff was present because his name appeared in a police report.

Q: Let me ask you this: How did you come to identify Officer Cutchall in your lawsuit?

A: From the police report.

Q: What in the police report told you that Officer Cutchall was involved?

> A. I'm not quite sure, bit I did – I started reading it and I was figuring out what officers were what, and that's how I came to the conclusion that, you know he was one of the officers involved in this.
>
> Q. What about Officer Reiff?
>
> A: Same thing. I read in there somewhere that his name came up, and he was part of this. Because, if you look on page 6 of my police report, which I have here, which if you want to look at it –
>
> Q: What does page 6 say?
>
> A: It just says – where I underlined it, it says "Officers Cutchall and Dorman." So that's how I know it was both of them. And I believe the other one was involved because I read in there somewhat he was involved in that. Because they give like a brief interview of what happened toward my pursuit right there, what they call a pursuit.
>
> * * *
>
> Q: . . . I'm trying to figure out if you're absolutely positive that Officer Reiff was there, because Officer Reiff is stating that he wasn't even there.
>
> A. Like I said, hey, I'm not absolutely 100 percent sure of Reiff, whatever his name is, Reiff, but I do know Dorman and Cutchall were there.

(Doc. # 46, Ex. 3  47:14-49:20.)

Reiff argues that he should not be forced to undergo a trial based on Plaintiff's unsupported speculation.

Cutchall argues that Plaintiff has failed to show that Cutchall had a realistic opportunity to intercede in the alleged excessive force. (Doc. #54 at 5.) Finally, they argue that the undisputed facts show that Plaintiff continued to resist commands to get to his knees even after he stopped and therefore he continued to pose a significant risk to officer safety. They assert that Dorman was justified in using deadly force to prevent Plaintiff from escaping and thus Dorman is entitled to qualified immunity. (Id. 5-6.)

**B.   Analysis**

The Fourth Amendment does not prohibit the use of reasonable force; the right to make an arrest carries with it the inherent right to use some force. Hicks v. City of Portland, 2006 WL 3311552, at *9 (D. Or. Nov. 8, 2006) (citing Graham, 490 U.S. at 396). Reasonable force is the force that is necessary to secure the safety of police officers during a search or arrest. Hicks, 2006 WL 3311552, at *8 (citing Graham, 490 U.S. at 397). Not

- 10 -

1 every push or shove, even if it may later seem unnecessary, violates the Fourth Amendment.
2 Forrester, 25 F.3d at 810.  The reasonableness determination must also take into account that
3 police officers must often make split-second judgments about the amount of force that its
4 necessary in a particular situation.  See Graham, 490 U.S. 396-97.

### 1. Dorman

Dorman admits using physical force on Plaintiff but provides evidence that Plaintiff was evading capture as a suspect in an armed home invasion.  For the purposes of this motion, the Court must view the facts in the light most favorable to Plaintiff and determine whether there are genuine issues of material fact.  Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*).  "[S]ummary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).

Defendants argue that it is undisputed that when Cutchall drove along side Plaintiff, Plaintiff stopped running, but remained standing, despite orders to get to his knees, and that he was then tackled by Dorman.  (Doc. #54 at 2.)  Plaintiff does not acknowledge (or clearly dispute) that he was ordered to his knees—only that he was ordered to stop and complied. Nevertheless, the Court finds that Dorman acted reasonably in tackling Plaintiff.  Not every push or shove, even if it may later seem unnecessary, violates the Fourth Amendment. Forrester, 25 F.3d at 810.  It is undisputed that Dorman was responding to a report of an armed home invasion and that upon encountering Plaintiff in the vicinity of the crime at 1:00 am, Plaintiff fled the scene, and it is undisputed that Plaintiff was standing when Dorman first made physical contact.

The Court rejects Plaintiff's arguments that because Plaintiff did not match the description of the home invaders, Dorman's actions were unreasonable.  Plaintiff offers no evidence—only speculation—that Dorman knew Plaintiff was Hispanic nor evidence of how Dorman could have determined Plaintiff's ethnicity as Plaintiff ran away in the dark. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  The seriousness

of the offense made the pursuit reasonable.  See Graham, 490 U.S. 396-97.  It was also reasonable for Dorman to be concerned that Plaintiff might have a weapon in view of the report that the invaders were armed.  Securing the safety of officers during an arrest is an important governmental interest.  Id. at 396; Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007).  The Court also notes that tackling Plaintiff was reasonable because reasonableness determinations must take into account that police officers must often make split-second judgments about the amount of force that its necessary in a particular situation.  See Graham, 490 U.S. 396-97.

But Plaintiff also asserts that *after* he was tackled and handcuffed, Dorman stomped his foot into Plaintiff's face and stomped Plaintiff's head and back and then kicked him into the patrol car.  "[T]he degree of force used is permissible only when a strong government interest compels the employment of such force."  Deorle v. Rutherford, 272 F.3d 1272, 1280 (9th Cir. 2001).  Viewing the facts in the light most favorable to Plaintiff, there is no evidence that Plaintiff continued to resist apprehension or continued to struggle or reached for a weapon after he was on the ground and handcuffed.  See Drummond v. City of Anaheim, 343 F.3d 1052, 1058 (9th Cir. 2003).  Although it is undisputed that Plaintiff had not yet been searched for a weapon, the force alleged by Plaintiff is unrelated to a search for weapons.  Defendants correctly argue that Plaintiff provides no medical evidence of his alleged injuries, see Santos v. Gates, 287 F.3d 846, 852 (9th Cir. 2000), but the issue for an excessive force claim is whether the force used was reasonable, not the degree of harm.  The lack of medical evidence of harm goes to the weight of Plaintiff's evidence of excessive force, but at summary judgment, the judge's role is not to weigh the evidence and determine the truth, but to determine if there is a genuine issue of fact for trial.  Anderson, 477 U.S. at 249.  It is enough that the factual dispute requires a judge or jury to resolve the differing versions of the truth.

In addition, Dorman has not established entitlement to qualified immunity.  The qualified immunity analysis requires Dorman to demonstrate that he acted reasonably

1    because the force alleged did not violate clearly established constitutional law. See Saucier,
2    533 U.S. at 201-02.

3    A right is clearly established if its contours are "sufficiently clear that a reasonable
4    official would understand that what he is doing violates that right." Kennedy v. City of
5    Ridgefield, 439 F.3d 1055, 1065 (9th Cir. 2006) (quoting Hope v. Pelzer, 536 U.S. 730, 739
6    (2002)). It is not necessary that there be a prior case with the identical facts showing that a
7    right is clearly established; it is enough that there is preexisting law that provides a defendant
8    "fair warning" that his conduct was unlawful. Kennedy, 439 F.3d at 1065. A police officer
9    can be liable for use of excessive force. Graham, 490 U.S. 386. The law was clearly
10   established in 2005 that there must be a government interest that compels the force used. See
11   Deorle, 272 F.3d at 1280. Thus, at the time in question, it was clearly established that
12   Plaintiff had a constitutional right to be free from unnecessary use of force.

13   Defendants argue that the constitutional violation alleged by Plaintiff would not have
14   been clear to a reasonable officer because there was no precedent at the time of the incident
15   that would have put Dorman on notice that using force to seize a suspect fleeing the scene
16   of an armed robbery was unconstitutional. (Doc. #45 at 12.) But as discussed, the Court has
17   determined that disputed facts, viewed in the light most favorable to Plaintiff, create a triable
18   issue regarding whether Dorman used excessive force after Plaintiff was handcuffed.
19   Dorman could not have reasonably believed that he was acting lawfully if he stomped on
20   Plaintiff's face, head, and back after Plaintiff was cuffed and on the ground and not
21   struggling. The same disputed facts that preclude summary judgment on the constitutional
22   prong preclude a finding of qualified immunity.

### 2. Cutchall and Reiff

24   Police officers have a "duty to intercede when their fellow officers violate the
25   constitutional rights of a suspect or other citizen." Cunningham v. Gates, 229 F.3d 1271,
26   1289-90 (9th Cir. 2000) (quoting United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir.
27   1994), rev'd on other grounds, 518 U.S. 81 (1996). But officers can be held liable only if
28   they had an opportunity to intercede. Cunningham, 229 F.3d at 1289-90; (citing with

approval Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990) (noting no opportunity to intercede where an alleged attack came quickly and was over in a matter of seconds)).

Here, the only account of the alleged attack that was not prevented by Cutchall and Reiff is that of Plaintiff. In his Complaint he states he was on the ground and "before I could even get my face turned all the way around and speak, [Dorman] crashed his foot down onto the side of may face with a stomping type motion . . .;" Plaintiff alleged that he screamed for help. (Doc. #1; see Doc. #51, PSOF ¶ 12.) He claims that the other officers watched without intervening. (PSOF ¶ 12.) In the Complaint, he states Dorman kicked him twice more. It appears from Plaintiff's account that the alleged attack came quickly and without warning and was over in a matter of seconds. Plaintiff, who has the burden to show that Defendants' conduct caused the alleged harm and thus that they could have intervened, offers no explanation how long the attack took, where the officers were standing, or how they could have stopped the alleged blows. See Celotex, 477 U.S. at 322-23 (summary judgment is appropriate against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial). The Court will grant summary judgment as to Cutchall.

In addition, there is insufficient probative evidence that Reiff was even present at the scene. Anderson, 477 U.S. at 248-49. Cutchall attests that Reiff was not there. Although Plaintiff claims that Cutchall offered differing accounts of this fact, Plaintiff submits no evidence to substantiate that claim. Plaintiff admits in his deposition that he did not know if Reiff was there—he only got Reiff's name from a police report. Although the police report has Reiff's name on it, it does not state that Reiff was there, and appears, according to the serial number 7102, to be written by Dorman. (Doc. #51, Ex. 3.) The Court will grant summary judgment as to Reiff.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion

for Summary Judgment (Doc. # 45).

(2) Defendants' Motion for Summary Judgment (Doc. # 45) is **granted in part and denied in part as follows**:

    (a) **denied** as to Dorman, except as provided herein; and

    (b) **granted** as to Cutchall and Reiff.

(3) The remaining claims are those against Dorman as described herein and Count III for denial of medical care.

DATED this 28th day of January, 2009.

*G. Murray Snow*
G. Murray Snow
United States District Judge